# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONDIA M. L.,[1] <br> Plaintiff, <br> v. <br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br> Defendant. | Case No. 2:20-cv-06497-AFM <br><br> **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for supplemental security income. In accordance with the case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

In December 2017, Plaintiff filed an application for supplemental security income, alleging disability beginning May 1, 2015. (Administrative Record ("AR") 150-157.) Plaintiff's application was denied. (AR 84-94.) On May 6, 2019, Plaintiff

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

appeared with counsel at a hearing conducted before an Administrative Law Judge ("ALJ"). At the hearing, Plaintiff and a vocational expert ("VE") testified. (AR 52-76.)

On May 21, 2019, the ALJ issued a decision finding that Plaintiff suffered from the following medically severe impairments: disorders of the back and obesity. (AR 42.) After determining that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ then assessed Plaintiff's residual functional capacity ("RFC"). The ALJ found that Plaintiff had the RFC to perform sedentary work with the following restrictions: Plaintiff can lift and carry ten pounds frequently and twenty pounds occasionally with unlimited pushing and pulling with the same weight restrictions; she can stand and walk for two hours and sit for six hours; she can frequently balance and occasionally climb stairs and ramps, stoop, kneel, crouch and crawl; can never climb ladders, ropes or scaffolds; and she should avoid concentrated exposure to hazards such as machinery and heights. (AR 43.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff was able to perform jobs existing in significant numbers in the national economy, including assembler, table work, and document preparer. (AR 47.) Accordingly, the ALJ determined that Plaintiff was not disabled from August 21, 2017 (the date of Plaintiff's application) through the date of his decision. (AR 48.) The Appeals Council denied review (AR 1-7), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1. Whether Plaintiff is entitled to a remand based upon the unconstitutional removal procedure in effect during the tenure of Andrew Saul.
2. Whether the ALJ provided legally sufficient reasons for rejecting Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial

evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. In the social security context, the substantial evidence threshold is "not high." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019). This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I. Plaintiff's Constitutional Challenge

After filing her brief in support of her complaint, Plaintiff filed a Notice of New Authority (ECF 25) and a Supplemental Brief (ECF 28) challenging the constitutionality of the ALJ's decision. Plaintiff contends that 42 U.S.C. § 902(a)(3) which limits the President's authority to remove the Commissioner of Social Security without good cause violates separation of powers. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020) (holding that a for-cause restriction of the President's executive power to remove the CFPB's single director violated the separation of powers doctrine). She argues that the unconstitutional removal provision rendered Andrew Saul's tenure as Commissioner (from June 17, 2019 to July 11, 2021), unconstitutional and "tainted" the "any delegation of authority that flows from this position is tainted in the same way the improper appoint of ALJs tainted the administrative proceedings in *Lucia* [*v. SEC*, 138 S. Ct. 2044 (2018)]." (ECF 28 at 6.) As a result, Plaintiff argues that she is entitled to a de novo hearing. (ECF 28.)

The Commissioner concedes that § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. (ECF 32 at 3-4.) Nevertheless, the Commissioner argues that Plaintiff is not entitled to a remand because she has failed to show any connection between the unconstitutional removal clause and ALJ Gunn's decision denying her benefits. The Commissioner also argues that the Court should deny Plaintiff's request for a new hearing based upon other legal and prudential considerations. (ECF 32 at 4-16.) For the following reasons, the Court agrees with the Commissioner.

Plaintiff's reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018), is misplaced. In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission are Officers of the United States and must be constitutionally appointed. *Lucia*, 138 S. Ct. at 2055. The Court concluded that the "appropriate" remedy for an adjudication tainted with an appointments violation is a new "hearing before a properly appointed" official. *Lucia*, 138 S. Ct. at 2055 (citing *Ryder v. United States*, 515 U.S. 177, 182-183 (1995)). Unlike *Lucia*, however, Plaintiff does not rely on an allegedly unconstitutional appointment. To the contrary, she essentially concedes that ALJ Gunn was properly appointed by Acting Commissioner Berryhill at the time she decided Plaintiff's disability claim. (*See* ECF 28 at 2, 6.)[2] Therefore, there is no Appointments Clause violation. *See Rivera-Herrera v. Kijakazi,* 2021 WL 5450230, at *6 (E.D. Cal. Nov. 22, 2021) ("the ALJ who adjudicated Plaintiff's claim on September 18, 2019 was properly appointed pursuant to former Acting Commissioner Berryhill's July 16, 2018 ratification of ALJ appointments. As such,

---

[2] On July 16, 2018, responding to the decision in *Lucia*, the acting Commissioner of the SSA — Nancy Berryhill — ratified the appointments of ALJs and administrative appeals judges (who were previously appointed by lower-level staff, rather than the Commissioner herself) to address any prospective Appointments Clause concerns. See *Rivera-Herrera v. Kijakazi*, 2021 WL 5450230, at *5 (E.D. Cal. Nov. 22, 2021); SSR 19-1p, 84 Fed. Reg. 9582, 9583 (2019). Plaintiff does not allege that Acting Commissioner Berryhill's authority was tainted by the unconstitutional removal provision.

there is no Appointments Clause violation."); *Lisa Y. v. Comm'r of Soc. Sec.*, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021) (same); *Marrs v. Comm'r of Soc. Sec.*, 2021 WL 4552254, at *4 (N.D. Tex. Oct. 5, 2021) (same).

Notwithstanding her attempt to characterize it otherwise, Plaintiff's claim is based upon an allegedly unconstitutional removal provision, and therefore, the controlling law is set forth in *Collins v. Yellen*, 141 S. Ct. 1761 (2021). *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) ("*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions."). In *Collins*, the plaintiffs sought a judicial declaration invalidating prior actions by the FHFA directors, who possessed removal protection and thus headed an unconstitutionally structured agency. *Collins*, 141 S. Ct. at 1787 (contending that FHFA actions were "adopted and implemented by officers who lacked constitutional authority and that their actions were therefore void *ab initio*"). The Supreme Court found such relief unwarranted. *Id*. at 1788. Rather, a plaintiff must demonstrate that the unconstitutional provision actually caused him or her harm. *Id*. at 1788-1789. The Court refused to invalidate the prior agency actions in their entirety, explaining:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA ... as void.

*Id*. at 1787 (emphasis in original). Accordingly, a claimant seeking relief must show that an unconstitutional removal restriction actually caused her harm. *See Collins*, 141 S. Ct. at 1787-1789 & n.24 (an unconstitutional removal restriction "does not mean that actions taken by such an officer are void *ab initio* and must be undone"); *Decker Coal Co.*, 8 F.4th at 1137 ("Here, the ALJ lawfully exercised power that he possessed by virtue of his appointment, which the Secretary ratified before the ALJ

adjudicated the claim. Absent a showing of harm, we refuse to unwind the decisions below.").

Plaintiff identifies no particular harm suffered by virtue of her claim being adjudicated during Commissioner Saul's tenure by an ALJ who was otherwise properly appointed. She has failed to show any connection between the unconstitutional removal clause and ALJ Gunn's decision denying her benefits. Further, nothing in the record supports the conclusion that the disability decision in Plaintiff's case is in anyway traceable to Commissioner Saul. Accordingly, Plaintiff is not entitled to a new hearing. *See Rivera-Herrera,* 2021 WL 5450230, at *8; *Lisa Y.*, 2021 WL 5177363, at *8 ("Reversal is not mandated under *Seila Law* or *Collins* because § 902(a)(3)'s removal clause is severable, and because there is no possibility § 902(a)(3)'s removal clause harmed Plaintiff."); *Catherine J.S.W. v. Comm'r of Soc. Sec.*, 2021 WL 5276522, at *8 (W.D. Wash. Nov. 12, 2021) (same); *Amanda B. v. Comm'r, Soc. Sec. Admin.*, 2021 WL 4993944, at *9 (D. Or. Oct. 26, 2021) ("Because Plaintiff offers nothing that traces the decision by the ALJ in her case to any alleged injurious conduct by the SSA Commissioner, she has not demonstrated traceability and her constitutional violation claim fails for lack of standing."); *see also Decker Coal*, 8 F.4th at 1136-1138 (plaintiff not entitled to new hearing based upon allegedly unconstitutional removal provision where the plaintiff failed to show make any showing of a nexus between the allegedly unconstitutional removal provisions and the ALJ's decision).

**II.    The ALJ's Analysis of Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ erred in discounting her testimony regarding her subjective symptoms and limitations. (ECF 20 at 4-16.) The Commissioner argues that the ALJ provided numerous legally sufficient reasons for his credibility determination. (ECF 32 at 16-19.)

### A. Plaintiff's Subjective Complaints

Plaintiff claimed that she is unable to work full time because of lower back pain and because her medications make her drowsy. (AR 59, 62, 169.) Plaintiff testified that she suffers from low back pain all the time, and it affects her legs. (AR 59-60; *see* AR 191 (Plaintiff's Exertion Quest Report).) Plaintiff takes Norco for her back pain and receives shots every four months. She participates in physical therapy in the pool once or twice a week. (AR 60-61.) She stated that she had not undergone surgery because her doctors told her it would paralyze her and they do not "want to go that route." (AR 61-62.)

According to Plaintiff, she stands only to cook dinner for her children, and she needs to sit down every five minutes. (AR 63, 193.) She can sit for ten to fifteen minutes, and when she sits she leans forward on a table to take pressure off her back. Plaintiff frequently lays down during the day. (AR 63-64.) Plaintiff estimated that she could walk four or five blocks (or half a mile), then she will need to sit down and rest for 30 minutes. (AR 67-68.) She said that her doctor told her that she cannot lift more than ten pounds. (AR 68, 70.)

Plaintiff has six children – ages 17, 12, 9, 8, 7, and 2 years old. She testified that her children help her with groceries, housework, and cleaning. According to her testimony, Plaintiff sleeps eight hours during the day. Her two-year old child stays home with her during the day and sleeps along with Plaintiff. (AR 64-66, 69, 189.) Plaintiff also testified that she would sometimes babysit kids in her home, recycle, donate plasma, or do hair. (AR 57.)

### B. Relevant Law

Where, as here, a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms, and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear, and convincing reasons before rejecting a claimant's testimony about the severity of her symptoms. *Lambert v. Saul*, 980 F.3d 1266, 1277

(9th Cir. 2020); *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991)) (en banc).

Factors an ALJ may consider include conflicts between the claimant's testimony and the claimant's conduct – such as daily activities, work record, or an unexplained failure to pursue or follow treatment – as well as ordinary techniques of credibility evaluation, such as internal contradictions in the claimant's statements and testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). In addition, lack of medical evidence is a factor that the ALJ can consider in making a credibility assessment. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

**C.     Analysis**

The ALJ summarized Plaintiff's subjective allegations and found that her "statements regarding the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 44.) The ALJ provided the following reasons in support of this determination.

<u>Lack of Support by Medical Evidence</u>

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681; *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence to support claimant's subjective complaints constitutes substantial evidence in support of an ALJ's adverse

credibility determination). Here, the ALJ found that Plaintiff's back impairment resulted in numerous functional limitations, but the medical evidence did not support the severity of Plaintiff's allegations. (AR 45.) In reaching her conclusion, the ALJ discussed and summarized the medical evidence as follows.

The ALJ began by noting that the record reflected complaints of chronic low back pain, as well as complaints of difficulty performing activities of daily living, lifting objects, and bending forward. (AR 45, citing AR 386-387, 391.) She further noted the results of an MRI performed in August 2013 (prior to the relevant period), which showed mild disc desiccation at the L5-S1 level with trace posterior disc bulge. Plaintiff's subarticular recesses, neural foramina and central canal were normal. (AR 286-287.)

Next, the ALJ cited positive clinical findings during physical examinations – namely, spasms on the bilateral paraspinal muscles at L1, L2, L3, L4, L5 and S1, slight to moderate reduced range of motion, and an antalgic gait. (AR 301, 387, 402, 407, 411-412, 417, 422, 432, 436.) To treat her back pain, Plaintiff received a series of bilateral lumbar facet joint injections, including March, June and October 2017; February, June and October 2018; and February 2019. (AR 302-303, 313-314, 318-319, 324-325, 347-348, 403-404, 408-409, 415-416.) Plaintiff also attended physical and aquatic therapy. (AR 449-452.) On the other hand, the ALJ also noted that the same physical examinations revealed negative straight leg raises and normal muscle tone in Plaintiff's lower extremities. (AR 301, 402, 407, 417, 426-427, 437, 446.) In October 2017, Plaintiff reported that her bilateral lumbar injection improved her pain by 80%, and the relief lasted for eleven weeks. (AR 299.) Plaintiff indicated that her activities of daily living were "better" and denied side effects from her current medications. (AR 300.) In February 2018, Plaintiff reported a 70% pain reduction from her previous injection and said that she was "able to do more, interact more, and have more restful nights." (AR 430.) In October 2018, Plaintiff again reported an 80% improvement in pain following her June 2018 injection. She also said that

her functioning had improved 70%. Plaintiff was participating in "an active home exercise program" and said that she was benefitting from it. (AR 405, 439-440.) In February 2019, Plaintiff reported a 70% improvement in pain after the October 2018 injections and said that the relief lasted for more than 12 weeks. She also indicated that her functioning had improved 60% and she was able to do more, interact more, and have more restful nights. (AR 400, 409.)

Finally, Plaintiff's BMI ranged from 45 to 51, and her condition was compounded by her extreme obesity. (*See* AR 301, 242, 401.)

Considering the evidence, the ALJ limited Plaintiff to sedentary work with additional postural and environmental limitations, but discounted Plaintiff's testimony that she suffered from greater restrictions. As set forth above, the objective medical evidence revealed only muscle spasm, slight to moderate restriction in range of motion, and gait abnormalities. Thus, the ALJ's finding that the medical record did not support Plaintiff's allegations of disabling limitations is supported by substantial evidence. In light of the medical record set forth in detail above, the ALJ properly relied upon the absence of objective medical support as a factor in deciding to discount Plaintiff's subjective complaints. *See Burch*, 400 F.3d at 681.

Effectiveness of Treatment

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Accordingly, substantial evidence of effective treatment may provide a specific, clear, and convincing reason to discount a claimant's subjective symptom testimony. *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1039-1040 (9th Cir. 2008); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

As set forth above, Plaintiff consistently reported that injections reduced her pain by 70% to 80% and that pain relief lasted approximately three months. The ALJ properly relied upon this evidence to conclude that Plaintiff's subjective allegations of disabling pain were not fully credible. *See Hazelton v. Saul*, 812 F. App'x 453,

454 (9th Cir. 2020) (ALJ properly discounted plaintiff's subjective complaints where the record "contain[ed] multiple records indicating that [plaintiff's] symptoms were alleviated through medications and injections" and "[o]ne medical record indicates [plaintiff] even reported 80% relief following lumbar injections"); *Thomas D. v. Kijakazi*, 2021 WL 2987153, at *4 (C.D. Cal. July 15, 2021) (ALJ properly relied on evidence of improvement with treatment to discount plaintiff's subjective complaints where records showed that the plaintiff's back care responded to lumbar facet injections); *Vetrano v. Berryhill*, 2019 WL 1060037, at *10 (C.D. Cal. Mar. 5, 2019) (ALJ properly relied on evidence that plaintiff's pain improved with medications, injections, and acupuncture to discount plaintiff's subjective complaints).

### Daily Activities

Inconsistency between a claimant's alleged symptoms and her daily activities may be a clear and convincing reason to find a claimant less credible. *See Ghanim*, 763 F.3d at 1165; *Tommasetti*, 533 F.3d at 1039. Daily activities are relevant when evaluating subjective symptom allegations, even when those activities do not indicate an ability to do work in a job. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (a claimant's activities may undercut a claimant's subjective symptom testimony when inconsistent with "claims of a totally debilitating impairment"). Therefore, although a claimant's performance of household duties may not directly correspond to specific work tasks, they may still provide a basis for discounting subjective symptoms if the daily activities reveal more functionality than alleged. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). At the same time, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *see Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("the mere fact a [claimant]

has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

The ALJ here found Plaintiff's description of her daily activities to be inconsistent with her allegations of disabling limitations. The ALJ noted that Plaintiff was able to do chores, care for her minor children (including full-time care of her two-year old), prepare meals, go to the store, and take public transportation. (AR 45; see AR 55-71, 188-193.) "Activities such as childcare, may support an ALJ's decision when it can be determined that they are performed for a substantial part of the day." *See Bridget A. A. v. Saul*, 2021 WL 2634822, at *5 (C.D. Cal. June 25, 2021) (citing *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the ability to care for children may undermine complaints of severe limitations). Plaintiff's ability to care for her two-year old child is not consistent with her allegations of extreme limitations such as the inability to lift more than ten pounds or stand for more than five minutes. *See, e.g., Khan v. Saul*, 855 F. App'x 343, 346 (9th Cir. 2021) (in discounting plaintiff's subjective allegations, the ALJ properly relied on the plaintiff's "statements regarding her activities of daily life which included caring for minor children and maintaining a household"); *Rollins*, 261 F.3d at 857 (holding taking care of children and maintaining a household to be a clear and convincing reason to discredit symptom testimony). Thus, the ALJ's reliance on Plaintiff's daily activities is arguably proper.

Plaintiff contends that the ALJ erred because she failed to explain which activity she found inconsistent with which of Plaintiff's allegations. (ECF 20 at 15.) However, because the ALJ provided other legally sufficient reasons supporting her determination to partially discredit Plaintiff's testimony, even if the ALJ erred in reliance on Plaintiff's daily activities, any error in this regard was harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-1162 (9th Cir. 2008).

**ORDER**

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: 1/5/2022

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE